**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSSETTS**

| | |
|---|---|
| VIRGINIA POLK, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN WELL CORP.,<br><br>            Defendant. | Civil Action No.  25-12790<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Dated: September 26, 2025

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (BBO # 716245)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta*
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury*
6 Carriage Lane
Highwood, IL 60040
Telephone: (312) 358-8225
Email: scott@drurylegal.com

*Attorneys for Plaintiff*

**\****Pro Hac Vice application forthcoming*

# TABLE OF CONTENTS

NATURE OF THE ACTION ........................................................................................ 1

PARTIES .................................................................................................................... 2

JURISDICTION AND VENUE ................................................................................. 3

FACTUAL ALLEGATIONS ...................................................................................... 3

    I.    The California Invasion of Privacy Act ............................................................ 3

    II.    The California Confidentiality of Medical Information Act................................ 5

    III.    Defendant's Website, iOS App, and Android App............................................. 7

    IV.    Heap's Tracking Technology............................................................................ 16

    V.    Defendant Aids, Agrees With, Employs, and Otherwise Enables Heap to Wiretap Californians' Communications............................................... 19

    VI.    Defendant Enables Heap to Pair the Above Data with Users' Identities........................................................................................................... 28

CLASS REPRESENTATION ALLEGATIONS ........................................................ 31

CAUSES OF ACTION ............................................................................................... 33

JURY TRIAL DEMANDED........................................................................................ 49

Plaintiff Virginia Polk ("Plaintiff") files this class action complaint on behalf of herself and all others similarly situated (the "Class Members") against American Well Corp. ("Amwell" or "Defendant").  Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of a class and subclass of all persons in the United States and residents of California, respectively, who, during the class period, had their personally identifiable information ("PII") and/or protected health information ("PHI") improperly intercepted by or otherwise disclosed to third-party Heap Inc. ("Heap"),[1] as a result of using the LiveHealth Online Website (available at (livehealthonline.com, hereinafter, the "Website"), the LiveHealth Online iOS App (available at https://apps.apple.com/us/app/livehealth-online-mobile/id597917484, hereinafter, the "iOS App"), and/or the LiveHealth Online Android App (available at https://play.google.com/store/apps/details?id=com.americanwell.android.member.wellpoint, hereinafter, the "Android App"), which are owned, operated, and controlled by Defendant.

2.      Defendant aids, employs, agrees with, and otherwise enables Heap to intercept Plaintiff's and Class Members' communications while using the Website, iOS App, and/or Android App, including communications containing PII and/or PHI.  Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

//

//

---

[1] Heap was acquired by Contentsquare. CONTENTSQUARE, *Contentsquare Completes Acquisition of Heap* (Dec. 7, 2023), https://contentsquare.com/blog/contentsquare-completes-acquisition-heap/ ("With its largest acquisition to date, Contentsquare strengthens its analytics platform").

**PARTIES**

*Plaintiff Virginia Polk*

3.      Plaintiff Virginia Polk is an adult citizen of the state of California and is domiciled in Sacramento, California.

4.      Plaintiff has used the Android App since 2024. Plaintiff accessed the Android App to schedule appointments to see family medicine specialists.

5.      Because Plaintiff accessed the Android App to schedule appointments with family medicine specialists, and because of Defendant's actions as alleged herein, Plaintiff's use of the Android App has led to the unlawful interception of her medical information, including information regarding her medical condition, history, and treatment.

6.      Specifically, as a result of Defendant's unlawful conduct as alleged herein, third-party Heap intercepted information about the medical appointments Plaintiff scheduled on the App—namely, appointments to receive care from family medicine specialists, along with Plaintiff's name, care category, type of appointment, and whether Plaintiff is taking or is allergic to medications.

7.      Pursuant to the systematic process described herein, Defendant assisted third-party Heap with intercepting Plaintiff's communications, including those that contained personally identifiable information, protected health information, and related confidential information. Defendant assisted these interceptions without Plaintiff's knowledge, consent, or express written authorization.

8.      By failing to receive the requisite consent, Defendant breached its duties of confidentiality and unlawfully disclosed Plaintiff's personally identifiable information and protected health information.

2

***Defendant American Well Corp.***

9.      Defendant American Well Corp. is incorporated in Delaware and has its principal place of business in Boston, Massachusetts.  Defendant facilitates a variety of health care services for its patients, such as urgent care, therapy, psychiatry, and allergy treatment.[2]  Patients can book online appointments with medical practitioners to access medical care and manage their treatment or diagnosis of medical conditions through the Website, iOS App, and/or Android App.

## JURISDICTION AND VENUE

10.      The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members of the Class, and there is minimal diversity.

11.      This Court has general personal jurisdiction over Defendant because Defendant is headquartered and maintains its principal place of business in this District.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL ALLEGATIONS

I.      **The California Invasion of Privacy Act**

13.      The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens.  The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

14.      The California Supreme Court has repeatedly stated an "express objective" of

---

[2] *See* LIVEHEALTH ONLINE, *See a doctor, online, 24/7*, https://livehealthonline.com/ (last accessed June 10, 2025).

CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap his telephone or listen in on the call*." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added).

15.     Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas*, 38 Cal. 3d at 360-61 (emphasis added; internal citations omitted).

16.     As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

17.     CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

18.     As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic

4

amplifying or recording device to eavesdrop upon or record [a] confidential communication."

19.     A "confidential communication" for the purposes of CIPA § 632 is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."  Cal. Penal Code § 632(c).

20.     Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).  Plaintiff does so, here, against Defendant.

## II.     The California Confidentiality of Medical Information Act

21.     Pursuant to the California Confidentiality of Medical Information Act ("CMIA"), "[a] provider of health care … shall not disclose medical information regarding a patient of the provider of health care … without first obtaining an authorization, except as provided in subdivision (b) or (c)."  Cal. Civ. Code § 56.10(a).[3]  "An authorization for the release of medical information … shall be valid if it meets the following conditions:"

(1)     Is handwritten or is in a typeface no smaller than 14-point type.

(2)     Is clearly separate from any other language present on the same page and is executed by a signature that serves no other purpose than to execute the authorization.

(3)     Is signed … and dated …

(4)     States the specific uses and limitations on the types of medical information to be disclosed.

(5)     States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

(6)     States the name or functions of the persons or entities authorized to receive the medical information.

(7)     States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the

---

[3] Subdivisions (b) and (c) are not relevant to this case but permit the disclosure of medical information in situations where a government investigation or lawsuit is taking place.  For example, Defendant could bypass the authorization requirement if patient medical information was requested pursuant to a lawful court order or by a party to a proceeding before a court or administrative agency pursuant to a subpoena.  *See* Cal. Civ. Code §§ 56.10(b)(3) and 56.10(b)(6).

medical information.

(8)    States an expiration date or event. The expiration date or event shall limit the duration of the authorization to one year or less, unless the person signing the authorization requests a specific date beyond a year or unless the authorization is related to an approved clinical trial[.]

(9)    Advises the person signing the authorization of the right to receive a copy of the authorization.

Cal. Civ. Code § 56.11.

22.    Additionally, "a provider of health care, health care service plan, contractor, or corporation and its subsidiaries and affiliates shall not intentionally share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide health care services to the patient." Cal. Civ. Code § 56.10(d).

23.    Moreover, a health care provider that maintains information for purposes covered by the CMIA is liable for negligent disclosures that arise as the result of an affirmative act—such as implementing a system that records and discloses online patients' personally identifiable information and protected health information. Cal. Civ. Code § 56.36(c).[4]  Similarly, if a negligent release occurs and medical information concerning a patient is improperly viewed or otherwise accessed, the individual need not suffer actual damages.  Cal. Civ. Code § 56.36(b).

24.    "In addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000).  In order to recover under this paragraph, it shall not be necessary that the plaintiff suffered or was threatened with actual damages. (2) The

---

[4] "Every provider of health care ... who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care ... who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36." Cal. Civ. Code § 56.101(a).

amount of actual damages, if any, sustained by the patient."  Cal. Civ. Code § 56.36(b).

### III.     Defendant's Website, iOS App, and Android App

25.     Defendant facilitates a variety of online health care services for its patients such as urgent care, therapy, psychiatry, and allergy treatment.[5]

26.     Defendant's online health care services are also known as "telehealth" services. Through its telehealth services, "[b]oard-certified doctors are available 24/7 and are trained to perform visits virtually."[6]

27.     Defendant's telehealth services are accessible on mobile devices and computers. Defendant explains that you can "[s]ign up or log in" "[u]sing your smartphone, tablet, or computer[,]" "[s]tart a video visit[,]" and "[g]et advice, treatment options, and a prescription if needed."[7]

28.     Patients can book online appointments with medical practitioners to access medical care and manage their treatment or diagnosis of medical conditions through Defendant's Website, iOS App, and Android App, without ever leaving home.

29.     Unbeknownst to Plaintiff and Class Members, however, Defendant aids, agrees with, employs, and otherwise enables Heap to eavesdrop on those confidential communications using Heap's wiretaps, as set out *infra*.

30.     Defendant has integrated Heap's wiretaps into the Website, iOS App, and Android App.  Through the integration of Heap's tracking technology,[8] Defendant assisted Heap with intercepting and otherwise obtaining the identities and online activity of Defendant's

---

[5] *See* LIVEHEALTH ONLINE, *See a doctor, online, 24/7*, https://livehealthonline.com/ (last accessed June 10, 2025).

[6] *Id.*

[7] *Id.*

[8] *See, e.g.*, HEAP, INSTALLATION, https://developers.heap.io/docs/web ("To get started with Heap, paste the following code snippet …"); *see also* HEAP, IOS UIKIT QUICK START, https://developers.heap.io/docs/ios ("To enable Heap and start automatically tracking supported user events, register the autocapture SDK …").

patients, including information related to the type of medical treatment patients were seeking and for which they booked appointments.

31.     Website, iOS App, and Android App users' confidential communications are the product of users affirmatively entering, and interacting with, information on the Website, iOS App, and Android App (*i.e.*, the confidential communications are not procedurally or automatically generated).  Instead, as set out below, the confidential communications stem from users conveying responses to questions and prompts, and actively making other selections.  All of the foregoing is information created through the intent of Website, iOS App, and Android App users, *e.g.*: (1) information created by and in response to users' communicative inputs; (2) information created by and in response to users' intended messages to the Website, iOS App, Android App, and Defendant; and (3) information created by the Website, iOS App, and Android App in response to users' having conveyed and expressed their respective desires that the Website, iOS App, and Android App would supply them with certain, highly personalized, types of information and/or responses.  Heap, as installed and integrated by Defendant, contemporaneously intercepts Website, iOS App, and Android App users' button clicks selecting such services.

32.     When a patient enters https://livehealthonline.com/[9] and logs into their account, they are prompted to "[s]et up [a] [n]ew [v]isit."  *See* Screen 1.



**"Screen 1"**

---

[9] The appointment booking flow process that Plaintiff viewed on her mobile Android device was substantially similar as that depicted in this complaint.

33.    Next, patients are prompted to either "[a]dd[] your health insurance information" from a drop-down list and click "[c]ontinue[,]" or otherwise click "[s]kip".  *See* Screen 2.



**"Screen 2"**

34.    Then, users are prompted to select "[w]ho is this visit for[,]" so Defendant can "match them with the right type of clinician."  *See* Screen 3.



**"Screen 3"**

9

35.     Users are next prompted to select "[w]here will you be located for this visit[,]" and then click "[c]ontinue[.]"  *See* Screen 4.[10]



**"Screen 4"**

36.     Afterwards, users are prompted to select the "[c]are [c]ategory[,]" meaning, the "type of care … [they] need today[.]"  *See* Screen 5.



**"Screen 5"**

---

[10] Address is redacted.

37.     Next, if users select "[m]ental [h]ealth" as their care category, users are prompted to select either "[t]herapy" or "[p]sychiatry" in order to "[s]chedule a video visit with a licensed therapist or psychologist for talk therapy, or a board-certified psychiatrist for medication management." *See* Screen 6.



**"Screen 6"**

38.     Users are next prompted to select "[w]hat type of visit do [they] need[.]" For example, users are prompted to select "[i]nitial" "if [they] are having a visit in this practice for the first time[,]" or, "[f]ollow [u]p," if they "are a returning patient to this practice[.]" *See* Screen 7.



**"Screen 7"**

11

39.    Patients are then instructed to "[a]dd details for the visit",[11] as well as answer "[a]dditional [q]uestions" and provide an emergency contact name and emergency contact phone number, before clicking "[c]ontinue[.]"  *See* Screens 8-9.



**"Screen 8"**



**"Screen 9"**

---

[11] Details are redacted.

40.     Afterwards, users are prompted to "[s]chedule a visit[.]"  *See* Screens 10-11. Specifically, users may click on "[v]iew [p]rofile" to view a particular provider, select an appointment time, or, click on "[s]how [m]ore [d]ays" to see that particular provider's additional availability.  *See id.*



**"Screen 10"**



**"Screen 11"**

41.    After selecting a particular appointment date and time with a specific clinician, users are prompted to select their "[i]nsurance company" from a drop-down list and click the "[c]ontinue" button, or, users may select "[s]kip[.]"  *See* Screen 12.  Next, users are prompted to "[c]onfirm contact information"[12] and click on "[c]ontinue[.]"  *See* Screen 13.



**"Screen 12"**



**"Screen 13"**

---

[12] Contact information is redacted.

14

42.    Then, users are prompted to enter their "[h]ealth [d]etails[,]" including whether users are: (1) "taking any medications"; (2) "allergic to any medications"; or (3) whether users have "[a]ny known medication conditions".  *See* Screen 14A.  If users select "[y]es," they have "known medical conditions[,]" users are prompted to "[s]elect all that apply."  *See* Screen 14B.



**"Screen 14A"**

**"Screen 14B"**

43.    Then, users are instructed to enter payment in order to book their appointment.  *See* Screen 15.



**"Screen 15"**

15

44.     Finally, users are instructed to click "I agree" and "Book Your Visit". *See* Screen 16.



**"Screen 16"**

## IV.     Heap's Tracking Technology

45.     Heap wiretaps the Website, iOS App, and Android App with its tracking technology,[13] which Defendant purposefully installed on the Website, iOS App, and Android App.

46.     Heap's tracking technology sends secret instructions to a Website, iOS App, or Android App user's browser or application, without alerting the individual that this is happening. The tracker then causes the browser or application to secretly and simultaneously duplicate the user's Website, iOS App, or Android App communications, transmitting these communications to Heap's servers alongside additional information about the Website, iOS App, or Android App user's identity. This entire process occurs within milliseconds. In other words, when a user communicates with Defendant's Website, iOS App, or Android App, those communications are

---

[13] *See, e.g.*, HEAP, INSTALLATION, https://developers.heap.io/docs/web ("To get started with Heap, paste the following code snippet …"); *see also* HEAP, IOS UIKIT QUICK START, https://developers.heap.io/docs/ios ("To enable Heap and start automatically tracking supported user events, register the autocapture SDK …").

simultaneously and contemporaneously duplicated and sent to Heap at the same time as they are being sent to Defendant.  Thus, Heap's interception of these communications occurs "in transit." *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion…"); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 961 (N.D. Cal. 2023) (finding in-transit interception was alleged based on similar process to the one alleged herein).

47.    Heap's tracking technology intercepts consumers' activities on websites and mobile applications into which the tracking technology has been integrated.[14]  Heap explains its tracking technology allows Heap to collect "all the data on your customers[.] **What they click. Where they go.  What they do, even when you're not looking**."[15]

48.    Defendant chose to integrate the Heap tracking technology into the Website, iOS App, and Android App by intentionally placing the Heap code therein.[16]

49.    Heap advertises that its tracking technology collects "data [that] is organized into [a] hierarchy … where users belong to accounts, users have many sessions, sessions include pageviews, and during those pageviews, events occur."[17]

50.    Activities that Heap intercepts and/or otherwise obtains via the Website, iOS App, and Android App include but are not limited to users' button clicks and page views.[18]

---

[14]  *See* HEAP, AUTOCAPTURED DATA, https://help.heap.io/hc/en-us/articles/18700150592924-Autocaptured-Data ("Heap's power comes from automatically capturing a wealth of user interactions in your app, which are classified as events and properties.").

[15]  HEAP, HOW HEAP WORKS, https://www.heap.io/why-heap/how-heap-works (emphasis added).

[16]  *See* HEAP, INSTALLATION, https://developers.heap.io/docs/web ("To get started with Heap, paste the following code snippet …"); *see also* HEAP, IOS UIKIT QUICK START, https://developers.heap.io/docs/ios ("To enable Heap and start automatically tracking supported user events, register the autocapture SDK …").

[17]  HEAP, AUTOCAPTURED DATA, https://help.heap.io/hc/en-us/articles/18700150592924-Autocaptured-Data (last accessed June 2, 2025); *see also* HEAP, *Episode 1: Autocapture*, https://www.heap.io/why-heap/how-heap-works.

[18]  *See* HEAP, AUTOCAPTURED DATA, https://help.heap.io/hc/en-us/articles/18700150592924-Autocaptured-Data.

51.     Heap also collects what it calls "sessions." Sessions encompass both "pageviews" and "events."  Heap further explains that "[a] session in Heap is a period of activity from a single user in your app or website. It can include many pageviews or events."  Session "properties" include but are not limited to "User ID", meaning "[t]he ID of the associated user[;]" "[p]latform", meaning "[t]he user's operating system[,]" and "[c]ountry" and "[r]egion, based on [users'] geolocation data."[19]

52.     Once Heap collects the activities that patients take on the Website, iOS App, and Android App, Heap processes the activities and then allows clients like Defendant to analyze that data.

53.     Specifically, Heap provides for analysis through segments,[20] dashboards,[21] charts,[22] and playbooks.[23]  Segments allow clients like Defendant to, *inter alia*, "target[] behavior-driven cohorts in marketing suites[.]"[24]  Dashboards allow clients to "drive measurable business outcomes by letting you custom group relevant charts."[25]  Charts "are saved analysis results. … For example, … to track pageviews and searches[.]"[26]  Clients can even "export a chart" to "Google Sheets[.]"[27]  And charts are important because clients can use them to "[g]raph conversion events, build funnels, track retention, and figure out which growth levers influence

---

[19]  HEAP, SESSION PROPERTIES, https://help.heap.io/hc/en-us/articles/18700150592924-Autocaptured-Data#session-properties (last accessed June 11, 2025).

[20]  HEAP, SEGMENTS, https://www.heap.io/platform/segments.

[21]  HEAP, DASHBOARDS, https://www.heap.io/platform/dashboards.

[22]  HEAP, CHARTS, https://www.heap.io/platform/charts.

[23]  HEAP, PLAYBOOKS, https://www.heap.io/platform/playbooks.

[24]  *Supra* note 21.

[25]  *Supra* note 22.

[26]  HEAP, CHARTS OVERVIEW, https://help.heap.io/hc/en-us/articles/18699972739612-Charts-Overview (last accessed June 11, 2025).

[27]  *Id.*

[Defendant's] business the most."[28]  Additionally, Defendant can "track[] key behaviors" by using "Playbooks [which] are pre-built dashboard templates, customized by industry, that let you generate charts and see relevant insights faster than ever."[29]  For example, Heap's dashboards allow "access to … user demographics" and "product engagement."[30]

54.     Thus, Heap provides Defendant with the ability to further optimize and monetize its Website, iOS App, and Android App.

55.     When Heap uses its wiretaps on Website, iOS App, and Android App users' communications, the wiretaps are not like tape recorders or "tools" used by one party to record the other.  Instead, Heap—a separate and distinct entity from the parties to the conversations— uses the wiretaps to eavesdrop upon, record, extract data from, and analyze conversations to which it is not a party.  Heap itself, collects the contents of said conversations.  That data is then analyzed by Heap before being provided to any entity that was a party to the conversations (like Defendant).

56.     Heap has the capability to use the contents of conversations it collects through its wiretaps for its own purposes.

**V.      Defendant Aids, Agrees With, Employs, and Otherwise Enables Heap to Wiretap Californians' Communications**

57.     Heap, as enabled by Defendant, contemporaneously intercepts and/or otherwise obtains the following communications of users of Defendant's Website, iOS App, and Android App.  The yellow highlights in the below transmissions show communications on the Website.  The blue highlights show communications on the iOS App.  The red highlights show communications on the Android App.

---

[28] *Supra* note 23.

[29] *Supra* note 24.

[30] *Supra* note 22.

58.    As shown by the highlights in the below screenshots of Website, iOS App, and Android App transmissions, Heap intercepts and/or otherwise obtains the users' first names (here, "Joe" and "Logan").  These communications are the product of button clicks on Screen 3.

```
click
button
cc-button-action ng-star-inserted
patient-card
@div;.col;.content;.l10;.m-b25;.offset-l1;.offset-xl2;.p0;.s12;.xl8;[_ngcontent-ng-c4245350367=];|@div;.patient-select__con
ng-c2394295599=];[role=main];[wrapper-content=];|@div;.m-b25;.ng-star-inserted;[_ngcontent-ng-c2394295599=];|@fi
den;[_ngcontent-ng-c2394295599=];[aria-labelledby=list];[role=radiogroup];|@aw-jumbo-button;.ng-star-inserted;[_ngc
295599=];[_nghost-ng-c2378194025=];[aria-checked=true];[aria-label=Me[ Joe]][aw-role=radio];[data-aw-id=patient-ca
tient-card];[role=radio];[styleclasses=m-b2];[tabindex=0];[version=4.0.13];|@div;.cc-button;.focus;.m-b2;.selected;[_ngcon
4025=];[automation=jumboButtonComponent];[aw-focustip=];[placement=bottom];|@aw-jumbo-button-action;.ng-sta
t-ng-c2626499631=];|@button;#patient-card;.cc-button-action;.ng-star-inserted;[_ngcontent-ng-c2626499631=];[aria-d
omation=jumboButtonComponentAction];[role=radio];[type=button];|
1749596885341
```

```
jumbo-button%3B.ng-star-inserted%3B%5B_ngcontent-ng-c2394295599%3D%5D%3B%5B_nghost-ng-
c2378194025%3D%5D%3B%5Baria-checked%3Dtrue%5D%3B%5Baria-
label%3DMe%2C%20Logan%5D%3B%5Baw-role%3Dradio%5D%3B%5Bdata-aw-id%3Dpatient-
card%5D%3B%5Belementid%3Dpatient-card%5D%3B%5Brole%3Dradio%5D%3B%5Bstyleclasses%3Dm-
b2%5D%3B%5Btabindex%3D0%5D%3B%5Bversion%3D4.0.13%5D%3B%7C%40div%3B.cc-
```

```
s12;.xl8;[_ngcontent-ng-c4245350367=];|@div;.patient-select__content;[_ngcontent-ng-c2394295599=];[role=main];[wrapper-content=];|@div;.m-b
ngcontent-ng-c2394295599=];|[_nghost-ng-c2378194025=];[aria-checked=true];[aria-label=Me[ Joe]][aw-role=radio];[data-aw-id=patient-card];[ele
onent];[aw-focustip=];[placement=bottom];|@aw-jumbo-button-action;.ng-star-inserted;[_nghost-ng-c2626499631=];|@button;#patient-card;.cc-b
```

//

//

//

//

//

//

//

//

59.     As shown by the highlights in the below screenshots of the Website, iOS App, and Android App transmissions, Heap also intercepts and/or otherwise obtains the care category selected by a user (here, "[m]ental [h]ealth").  These communications are the product of button clicks on Screen 5.

1747234557407

6924742860027106

click

button

cc-button-action

service-line-classification-card-id-842

@div;.m-b25;|@div;.wrapper-content;[_ngcontent-ng-c117919510=];[wrapper-content=];|@div;[_ngcontent-ng-c117919510=];|@cvg-masc
@div;.masonry-col;|@div;.m-b15;.masonry-row-item;.px2;|@cvg-selection-card;[_ngcontent-ng-c117919510=];[cy-item-index=2];[data-cy=
ationNormalButton];[styleclasses=cc-button sls-card pointer p2 m-b2 status-success];[version=4.0.16];|@div;.cc-button;.focus;.m-b2;.p2;.po
lButton];[aw-focustip=];[placement=bottom];|@aw-jumbo-button-action;[_nghost-ng-c2626499631=];|@button;#service-line-classification
ntal Health];[automation=jumbolllustrationNormalButtonAction];[event-label=Mental Health];[type=button];|

1747234633651

card-id-842%3B.cc-button-action%3B.ng-star-inserted%3B%5B_ngcontent-ng-

c2626499631%3D%5D%3B%5Baria-describedby%3D%5D%3B%5Baria-

label%3DMental%20Health%5D%3B%5Bautomation%3DjumbolllustrationNormalButtonAction%5D%3B%5Beven

t-label%3DMental%20Health%5D%3B%5Btype%3Dbutton%5D%3B%7C

ted;.px2;|@cvg-selection-card;.ng-star-inserted;[_ngcontent-ng-c3147217182=];[cy-item-index=2];[data-cy=classificationItem];|@a
tton;.focus;.m-b2;.p2;.pointer;.sls-card;.status-success;[_ngcontent-ng-c2378194025=];[automation=jumbolllustrationNormalButto
-ng-c2626499631=];[aria-describedby=];[aria-label=Mental Health];[automation=jumbolllustrationNormalButtonAction];[event-lat

60.    As shown by the highlights in the below screenshots of the Website, iOS App, and Android App transmissions, Heap further intercepts and/or otherwise obtains the particular type of mental health appointment selected by a user (here, "[t]]herapy").  These communications are the product of button clicks on Screen 6.

```
click
button
cc-button-action ng-star-inserted
service-line-classification-card-id-843
@cvg-masonry-grid;.ng-star-inserted;[_ngcontent-ng-c3147217182=];|@div;.flex;.justify-center;.m-xn2;.masonry-grid-co
sonry-col;.ng-star-inserted;|@div;.m-b15;.masonry-row-item;.ng-star-inserted;.px2;|@cvg-selection-card;.ng-star-inserte
-c3147217182=];[cy-item-index=1];[data-cy=classificationItem];|@aw-jumbo-button;.ng-star-inserted;[_nghost-ng-c237
mationvalue=jumboIllustrationNormalButton];[styleclasses=cc-button sls-card pointer p2 m-b2 status-success];[version
-button;.focus;.m-b2;.p2;.pointer;.sls-card;.status-success;[_ngcontent-ng-c2378194025=];[automation=jumboIllustration
[aw-focustip=];[placement=bottom];|@aw-jumbo-button-action;.ng-star-inserted;[_nghost-ng-c2626499631=];|@button
assification-card-id-843;.cc-button-action;.ng-star-inserted;[_ngcontent-ng-c2626499631=];[aria-describedby=];[aria-lab
omation=jumboIllustrationNormalButtonAction];[event-label=Therapy];[type=button];|
```

```
card-id-843%3B.cc-button-action%3B.ng-star-inserted%3B%5B_ngcontent-ng-

c2626499631%3D%5D%3B%5Baria-describedby%3D%5D%3B%5Baria-

label%3DTherapy%5D%3B%5Bautomation%3DjumboIllustrationNormalButtonAction%5D%3B%5Bevent-

label%3DTherapy%5D%3B%5Btype%3Dbutton%5D%3B%7C
```

```
tar-inserted;.px2;|@cvg-selection-card;.ng-star-inserted;[_ngcontent-ng-c3147217182=];[cy-item-index=1];[data-cy=classi
v;.cc-button;.focus;.m-b2;.p2;.pointer;.sls-card;.status-success;[_ngcontent-ng-c2378194025=];[automation=jumboIllustrati
gcontent-ng-c2626499631=];[aria-describedby=];[aria-label=Therapy];[automation=jumboIllustrationNormalButtonAction
```

//

//

//

//

//

//

//

22

61.    As shown by the highlights in the below screenshots of the Website, iOS App, and Android App transmissions, Heap also intercepts and/or otherwise obtains the visit type selected by a user (here, "[i]nitial," as in an initial visit).  These communications are the product of button clicks on Screen 7.



62.    As shown by the highlights in the below screenshots of the Website and iOS App transmissions, Heap also intercepts and/or otherwise obtains the particular clinician that a user chooses to schedule an appointment with, by means of the clinician's provider profile ID (here, "provider-profile/ …").  These communications are the product of button clicks on Screens 10 and 11.

63.     As shown by the below screenshot, a provider profile ID is unique to each clinician, and each clinician's provider profile ID is prominently displayed in the URL header located immediately above that particular clinician's name and "Clinician Bio."



64.     As shown by the highlights in the below screenshots of the Website, iOS App, and Android App transmissions, Heap also intercepts and/or otherwise obtains: (1) whether a user is taking any medications (here, "yes" for the Website, and "no" for the iOS App and Android App); and (2) whether a user is allergic to any medications (here, "no" for the Website, and "no" for the iOS App and Android App). These communications are the product of button clicks on Screens 14A.

//

//

//

24

button

cc-button-action

yesButtonheader-are-you-taking-any-medications

@div;[_ngcontent-ng-c2427866182=];|@div;.m-b25;[_ngcontent-ng-c2427866182=];|@cvg-history-section;[_
n];|@cvg-yes-no-card;.m-b3;[_ngcontent-ng-c1745678724=];[aria-label=header-are-you-taking-any-medicat
-c2378194025=];[automationvalue=jumboNoIconSelectedButton];[data-aw-id=yesButton];[version=4.0.12];|@
[placement=bottom];|@aw-jumbo-button-action;[_nghost-ng-c2626499631=];|@button;#yesButtonheader-a
header-are-you-taking-any-medications];[automation=jumboNoIconSelectedButtonAction];[role=radio];[tab

click

button

cc-button-action

noButtonheader-are-you-allergic-to-any-medications

@div;.m-l2;.m-r2;[_ngcontent-ng-c2427866182=];|@div;[_ngcontent-ng-c2427866182=];|@div;.m-b25;[_ngcontent-ng-c2
=allergiesSection];|@cvg-yes-no-card;.m-b3;[_ngcontent-ng-c1745678724=];[aria-label=header-are-you-allergic-to-any-
tton;.flex-1;[_nghost-ng-c2378194025=];[automationvalue=jumboNoIconSelectedButton];[data-aw-id=noButton];[versio
Button];[aw-focustip=];[placement=bottom];|@aw-jumbo-button-action;[_nghost-ng-c2626499631=];|@button;#noButt
=true];[aria-describedby=header-are-you-allergic-to-any-medications];[automation=jumboNoIconSelectedButtonAction
1747239536380

inserted%3B%5B_nghost-ng-c2626499631%3D%5D%3B%7C%40button%3B%23noButtonheader-are-you-

taking-any-medications%3B.cc-button-action%3B.ng-star-inserted%3B%5B_ngcontent-ng-

c2626499631%3D%5D%3B%5Baria-checked%3Dtrue%5D%3B%5Baria-describedby%3Dheader-are-you-

taking-any-

focustip%3D%5D%3B%5Bplacement%3Dbottom%5D%3B%7C%40aw-jumbo-button-action%3B.ng-star-

inserted%3B%5B_nghost-ng-c2626499631%3D%5D%3B%7C%40button%3B%23noButtonheader-are-you-

allergic-to-any-medications%3B.cc-button-action%3B.ng-star-inserted%3B%5B_ngcontent-ng-

c2626499631%3D%5D%3B%5Baria-checked%3Dtrue%5D%3B%5Baria-describedby%3Dheader-are-you-

allergic-to-any-

click

button

cc-button-action ng-star-inserted

noButtonheader-are-you-taking-any-medications

@div;.m-b25;[_ngcontent-ng-c2427866182=];|@cvg-history-section;[_ngcontent-ng-c2427866182=];|[_ng
nsSection];|@cvg-yes-no-card;.m-b3;[_ngcontent-ng-c1745678724=];[aria-label=header-are-you-taking-
ole=radiogroup];|@aw-jumbo-button;.flex-1;.ng-star-inserted;[_nghost-ng-c2378194025=];[automationv
@div;.cc-button;.focus;.selected;[_ngcontent-ng-c2378194025=];[automation=jumboNoIconSelectedBut
nserted;[_nghost-ng-c2626499631=];|@button;#noButtonheader-are-you-taking-any-medications;.cc-bu
rue];[aria-describedby=header-are-you-taking-any-medications];[automation=jumboNoIconSelectedBut
1749519219533

button

cc-button-action ng-star-inserted

noButtonheader-are-you-allergic-to-any-medications

@div;.m-b25;[_ngcontent-ng-c2427866182=];|@cvg-history-section;[_ngcontent-ng-c2427866182=];[_nghost-
[_ngcontent-ng-c1745678724=];[aria-label=header-are-you-allergic-to-any-medications];[aria-labelledby=hea
utton;.flex-1;.ng-star-inserted;[_nghost-ng-c2378194025=];[automationvalue=jumboNoIconSelectedButton];[d
content-ng-c2378194025=];[automation=jumboNoIconSelectedButton];[aw-focustip=];[placement=bottom];|(
button;#noButtonheader-are-you-allergic-to-any-medications;.cc-button-action;.ng-star-inserted;[_ngcontent
allergic-to-any-medications];[automation=jumboNoIconSelectedButtonAction];[role=radio];[tabindex=0];[type
1749519250944

25

65.    As shown by the highlights in the below screenshot of the Website, iOS App, and Android App transmissions, Heap also intercepts and/or otherwise obtains communications regarding users completing their appointment booking (here, "You're all done – HealthCare", and "request-visit…finished"). These communications are the product of button clicks on Screen 16.

```
2
/default/video-callback/all/set
converge.livehealthonline.com
You're all done - HealthCare
1749485918931
/default/video-callback/init-visit
r
https://livehealthonline.com/
```

```
GET /h?a=2374058717&u=6255553408930505&v=8097166374110712&s=1647725865413058&
i=c84a972e-3754-a271-2392-0c14f1f8130a&b=web&tv=4.0&z=2&
h=%2Fwebview%2Fdefault%2Fvideo-callback%2Finit-visit&
q=%3Ftenant%3DWLPT%26authType%3DDIRECT%26cancelPath%3Dpatient-home%26encounterType%3D
amwell-scheduled&d=converge.livehealthonline.com&
t=You%E2%80%99re%20all%20done%20-%20HealthCare&ts=1749488545689&
pr=%2Fwebview%2Frequest-visit%2Ffinished&sp=ts&sp=1749488386532&sp=d&sp=converge.
livehealthonline.com&sp=h&sp=%2Fwebview%2Fstart&sp=q&
sp=%3Ftenant%3DWLPT%26authType%3DDIRECT&sch=647&scw=375&st=1749488545690&lv=4.23.7&
ld=cdn.heapanalytics.com HTTP/1.1
host: heapanalytics.com
```

```
/webview/default/video-callback/init-visit
?tenant=WLPT&authType=DIRECT&cancelPath=patient-home&encounterType=amwell-scheduled
converge.livehealthonline.com
You're all done - HealthCare
1749519406028
/webview/request-visit/finished
```

//

//

//

//

//

66. Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant to disclose her PII, PHI, and/or other communications. Moreover, Plaintiff was never provided with the required notice that Defendant disclosed the PHI of users of the Website, iOS App, or Android App, nor was she provided any means of opting out of such disclosures. Defendant nonetheless knowingly disclosed Plaintiff's PHI to Heap.

67. By law, Plaintiff is entitled to privacy in her protected health information and confidential communications. Defendant deprived Plaintiff of her privacy rights when it: (1) implemented a system that surreptitiously tracked, recorded, and disclosed Plaintiff's and other online patients' confidential communications, personally identifiable information, and protected health information; (2) disclosed patients' PHI to Heap—an unauthorized third-party eavesdropper; and (3) undertook this pattern of conduct without notifying Plaintiff and without obtaining her express written consent. Plaintiff did not discover that Defendant disclosed her PII, PHI, and other communications to Heap, and assisted Heap with intercepting their communications, until May 2025.

//

//

//

//

//

//

//

//

**VI.    Defendant Enables Heap to Pair the Above Data with Users' Identities**

68.    The Heap tracking technology at issue pairs wiretapped data (including medical information) with Website, iOS App, and Android App users' identities.

69.    Heap "uses deterministic and probabilistic tracking" to "track individual user's journeys across multiple devices."[31]  "Probabilistic tracking looks for patterns in anonymized data to make an educated guess about if it's the same person using different devices."[32] "Deterministic tracking uses unique identifiers to link devices, which usually means logins. ... Deterministic tracking will link those logins and identify you as the same user. … Because deterministic tracking can tell you for certain which user is which, [one] can use it to carry out highly accurate personalization[.]"[33]

70.    Accordingly, "[i]f a user visits [the] website on their mobile device and their laptop, Heap will recognize 2 different anonymous users[.]"[34]  "When this person logs in, [then Heap] recognize[s ] their internal user ID"[35] via "Heap's identify API, … [which] tells [Heap] that these users are the same, and that [it] should join their data together. Internally, [Heap] call[s] this a 'user migration' because [it is] migrating user and event data from one record to another. In other words, [Heap] resolv[es] data from two [anonymous] users into one identity. This is identity resolution, at a high-level."[36]

71.    Thus, Heap collects "granular, user-level data of how people are interacting with

---

[31] HEAP, HOW CROSS-DEVICE TRACKING HELPS DRIVE GROWTH FOR YOUR BUSINESS, https://www.heap.io/topics/cross-device-tracking.

[32] HEAP, HOW CROSS-DEVICE TRACKING HELPS DRIVE GROWTH FOR YOUR BUSINESS, https://www.heap.io/topics/cross-device-tracking.

[33] Id.

[34] HEAP, TRACK USER IDENTITY, https://developers.heap.io/docs/using-identify.

[35] Id.

[36] HEAP, HEAP CONNECT: IDENTITY RESOLUTION (S3 ONLY), https://help.heap.io/hc/ en-us/articles/18700033430684-Heap-Connect-Identity-Resolution-S3-only.

[the] site [and] app. It presents a list of users … [and f]or each user listed, Heap shows … all

their events grouped by sessions. … At the top of each user's entry is their unique identifier, …

[attached] via [the Heap] Identify API."[37]

72.     As depicted by the following image, the unique identifier attached via the Heap

Identify API on the Website, iOS App, and Android App is labeled a "marketingId" by

"api.cvg01.amwell.systems/identifier-generating-service/api[.]"  The marketingId is "a string [of

alphanumeric characters] that uniquely identifies a user[.] … This means no two users … share

the same identity."[38]



73.     That Defendant has enabled Heap's "identify" API is evinced by the following

"heapanalytics.com/api/identify" transmission, which includes the marketingId shown directly

*supra*.



74.     The marketingId is paired with Website, iOS App, and Android App users'

medical information.  *See* Exhibits A (Website transmissions pairing marketingId and medical

information), B (same for iOS), and C (same for Android).  This "create[s] a single, cohesive

view of a user across devices, browsers, and domains."[39]

75.     Making matters worse, the marketingId also "let[s] you track behavior across …

third-party tools."[40]  It is possible to "[j]oin Heap data with other sources (revenue data,

---

[37] HEAP, USERS OVERVIEW, https://help.heap.io/hc/en-us/articles/18980579856796-Users-overview.

[38] HEAP, IDENTIFY, https://developers.heap.io/reference/identify.

[39] HEAP, HEAP CONNECT: IDENTITY RESOLUTION (S3 ONLY), https://help.heap.io/hc/en-us/articles/18700033430684-Heap-Connect-Identity-Resolution-S3-only.

[40] HEAP, HOW CROSS-DEVICE TRACKING HELPS DRIVE GROWTH FOR YOUR BUSINESS, https://www.heap.io/topics/cross-device-tracking.

Salesforce data, marketing automation, etc.)"[41] by using identifiers like the marketingId as "[a]

join key[, which] is a user property used to match users in Heap to another source. When you

connect Heap to another source (ex: Salesforce), Heap needs a way to organize which properties

or events belong to which users."[42] "Common properties used as join keys include: Identity

[and] Unique, internal user ID[,]"[43] like the marketingId.

76.     Indeed, the same marketingId intercepted by Heap appears in transmissions to

"analytics.amwell.systems/matomo.php[]" – a URL naming "Matomo," which is a separate

tracking technology.[44]

77.     On top of this, as shown above, Heap intercepts and/or otherwise obtains Website,

iOS App, and Android App users' first names.

---

[41] HEAP, HEAP CONNECT: OVERVIEW & SETUP, https://help.heap.io/hc/en-us/articles/18700017512348-Heap-Connect-Overview-Setup.

[42] HEAP, WHAT IS A JOIN KEY, https://help.heap.io/hc/en-us/articles/18699955633308 -What-is-a-join-key.

[43] Id.

[44] See, e.g., INNOCRAFT LIMITED, MATOMO, https://matomo.org/.

## CLASS REPRESENTATION ALLEGATIONS

78. Plaintiff seeks to represent a class defined as:

> All persons in the United States who, during the class period, had their PII and/or PHI improperly intercepted by or otherwise disclosed to Heap, as a result of using the Website, iOS App, and/or Android App (the "Class" or "Nationwide Class").

79. Plaintiff seeks to represent a subclass defined as:

> All California residents who, during the class period, had their PII and/or PHI improperly intercepted by or otherwise disclosed to Heap, as a result of using the Website, iOS App, and/or Android App (the "Subclass" or "California Subclass") (the Class and Subclass collectively, the "Classes").

80. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

81. The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

82. The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

83. **Numerosity/Ascertainability:** Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class Members is unknown to Plaintiff at this time; however, it is estimated that there are hundreds of

31

thousands of individuals in the Class. The identity of such membership is readily ascertainable from Defendant's records and non-party records, such as those of Heap.

84. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, had her confidential electronic communications intercepted and/or disclosed to third-party Heap, as a result of using LiveHealth Online.

85. **Adequate Representation:** Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

86. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following: whether Defendant violated CIPA §§ 631 and 632, Cal. Civ. Code § 56.10, and Plaintiff's and Class Members' privacy rights as provided by the California Constitution and common law, and whether Plaintiff and the proposed Class members are entitled to damages, reasonable attorneys' fees, prejudgment interest and costs of this suit.

87. **Superiority:** Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Federal Wiretap Act,**
**18 U.S.C. § 2510, *et seq*.**
**(On Behalf of the Nationwide Class and California Subclass)**

88.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Classes.

89.    The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, makes it unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication.  18 U.S.C. § 2511(a).

90.    Further, the Federal Wiretap Act makes it unlawful for a person to intentionally disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(c)

91.    Further, the Federal Wiretap Act makes it unlawful for a person to intentionally use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(d).

33

92.    The Federal Wiretap Act protects both the sending and receiving of communications.

93.    Among other ways, a violation of the Federal Wiretap Act occurs if a person:

(a)    intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; [or]

(b)    intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication[.]

18  U.S.C. § 2511.

94.    Under the Federal Wiretap Act, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Federal Wiretap Act] may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

95.    In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), Defendant intentionally procured third-party Heap, to intercept and endeavor to intercept the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential and sensitive PII and PHI of Plaintiff and Class Members via the Website, iOS App, and Android App. At relevant times, Defendant knew that by integrating and embedding Heap's tracking technology, Heap would intercept the electronic communications of users of the Website, iOS App, and Android App.

96.    In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), Defendant intentionally intercepted, and endeavored to intercept, the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential and sensitive PII and PHI of Plaintiff and Class Members via the Website, iOS App, and Android App.

97.    In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(c), Defendant

34

disclosed, and endeavored to disclose, the contents of the electronic communications of Plaintiff and Class Members to generate profits and increase revenues by, *inter alia*, attempting to increase its number of patients through targeted marketing based on an analysis of the intercepted communications, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class Members, in violation of the Federal Wiretap Act, as alleged herein. Indeed, Defendant procured Heap to surreptitiously intercept the communications of Plaintiff and Class Members without their consent, thereby knowing that the information from those communications was obtained in violation of the Federal Wiretap Act.

98.     In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(d), Defendant used, and endeavored to use, the contents of the electronic communications of Plaintiff and Class Members to generate profits and increase revenues by, *inter alia*, attempting to increase its number of patients through targeted marketing based on an analysis of the intercepted communications, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class Members, in violation of the Federal Wiretap Act, as alleged herein.  Indeed, Defendant procured Heap to surreptitiously intercept the communications of Plaintiff and Class Members without their consent, thereby knowing that the information from those communications was obtained in violation of the Federal Wiretap Act.

99.     The following items constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

    a.    The codes and programs Heap used to track Plaintiff's and Class Members' communications while they were navigating the Website, iOS App, and Android App;

    b.    Plaintiff's and Class Members' browsers and mobile applications;

c.   Plaintiff's and Class Members' computing and mobile devices;

d.   The codes and programs used by Heap to effectuate its tracking and interception of Plaintiff's and Class Members' communications while they were using a browser or application to visit Defendant's Website, iOS App, and Android App; and

e.   The plan Heap carried out to effectuate its tracking and interception of the Plaintiff's and Class Members' communications while they were using Defendant's Website, iOS App, and Android App.

100.   The patient communication information that Defendant permitted Heap to intercept, and that Defendant otherwise disclosed to Heap, via Defendant's integration of the Heap tracking technology on the Website, iOS App, and Android App—including but not limited to: (1) first name; (2) marketingID; (3) the type of care patients were seeking (*e.g.*, therapy); (4) the fact that patients actually booked an appointment, (5) whether it was a patient's initial visit; and, (6) in the case of the Website and iOS App, the particular healthcare practitioner that patients booked an appointment with—constitutes the contents of electronic communication because it includes detailed URL requests and button clicks that contain information Plaintiff and the Classes actively inputted into the Website.

101.   The transmissions described above were "transfer[s] of signs, signals, writing, … data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetics, photoelectronic, or photooptical system that affects interstate commerce[,]" and were therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

102.   Heap was not an authorized party to the communications between Plaintiff and Class Members, on the one hand, and Defendant, on the other, because Plaintiff and Class Members did not know that these third parties were surreptitiously intercepting the data at issue and did not knowingly send any communications to Heap.

103.   Plaintiff and Class Members did not consent to Defendant's conduct of: (1) procuring Heap to intercept their confidential communications; (2) intercepting their confidential

36

communications; (3) disclosing their confidential communications under circumstances that violated the Federal Wiretap Act; and (4) using their confidential communications under circumstances that violated the Federal Wiretap Act.

104. Defendant intentionally intercepted and endeavored to intercept Plaintiff's and Class Members' communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, violation of the CIPA, and violation of the CMIA, among others.

105. Defendant was not acting under color of law in intercepting and endeavoring to intercept Plaintiff's and Class Members' communications.

106. Defendant and Heap intercepted and endeavored to intercept the communications of Plaintiff and Class Members made via the Website, iOS App, and Android App while those communications were in transit, as opposed to being in storage. Indeed, Defendant and Heap intercepted and endeavored to intercept the communications of Plaintiff and Class Members in real time and contemporaneously with Plaintiff and Class Members engaging in those communications.

107. After intercepting the communications, Heap used the contents of the communications to provide Defendant with analytics and marketing services, as well as for its own business purposes.

108. As a result of the above actions, Plaintiff and Class Members have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications in violation of 18 U.S.C. § 2520. As such, Plaintiff and Class Members are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and any profits made by Defendant as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or

37

$10,000; (2) appropriate equitable or declaratory relief; and (3) reasonable attorneys' fees and other costs reasonably incurred.

## COUNT II
### Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631

109.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

110.    Plaintiff brings this Count individually and on behalf of the members of the Subclass.

111.    CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

112.    CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

113.    Heap's tracking technology is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

114.    Heap is a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, Heap has the capability to use the wiretapped information for its own purposes. Accordingly, Heap has been a third party to any communications between Plaintiff and Subclass Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

115.    At all relevant times, through its tracking technology, Heap willfully and without the consent of all parties to the communication, and/or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Subclass Members, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

116.    At all relevant times, Heap used or attempted to use the communications intercepted by its tracking technologies for its own purposes.

117.    At all relevant times, Defendant aided, agreed with, employed, permitted, and otherwise enabled Heap to wiretap Plaintiff and Subclass Members using Heap's tracking

39

technology and to accomplish the wrongful conduct at issue here.

118.    Plaintiff and Subclass Members did not provide their prior consent to Heap's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and Subclass Members' electronic communications. Nor did Plaintiff and Subclass Members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, and otherwise enabling Heap's conduct.

119.    The wiretapping of Plaintiff and Subclass Members occurred in California, where Plaintiff and Subclass Members accessed the Website, iOS App, and/or Android App, and where Heap—as enabled by Defendant—routed Plaintiff's and Subclass Members' electronic communications to Heap's servers.

120.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

**COUNT III**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 632**

121.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

122.    Plaintiff brings this Count individually and on behalf of the members of the Subclass.

123.    CIPA § 632(a) provides for liability where an entity:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

124.    Heap's tracking technologies are "electronic amplifying or recording device[s]."

*Id.*

125.    Cal. Civ. Code § 56.05(j) states:

> "Medical information" means any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care ... regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment.

126.    Per Cal. Civil Code § 56.10(a):

> A provider of health care, … shall not disclose medical information regarding a patient of the provider of health care … without first obtaining an authorization, except as provided in subdivision (b) or (c).

127.    Per Cal. Civ. Code § 56.10(d):

> Except to the extent expressly authorized by a patient, enrollee, or subscriber, or as provided by subdivisions (b) and (c), a provider of health care, health care service plan, contractor, or corporation and its subsidiaries and affiliates shall not intentionally share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide health care services to the patient.

128.    Here, Website, iOS App, and Android App users' communications with Defendant—made while browsing and booking appointments via the Website, iOS App, and Android App—contain sensitive and confidential "[m]edical information," as defined by Cal. Civil Code § 56.05.

129.    First, the communications include "individually identifiable information[.]" Cal. Civil Code § 56.05. Defendant enables Heap to identify individual Website, iOS App, and Android App users through a combination of patients' names, Heap identities, and Heap user IDs, which, "alone or in combination with other publicly available information, reveals the identity of the individual." Cal. Civ. Code § 56.05.

130.    Second, Website, iOS App, and Android App users' communications with

41

Defendant relate to "a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment."  Cal. Civ. Code § 56.05.  Heap intercepts and/or otherwise obtains Website, iOS App, and Android App users' button clicks selecting the particular type of appointment patients were seeking, and the fact that patients booked an appointment.  Heap also intercepts and/or otherwise obtains Website and iOS App users' button clicks selecting the particular healthcare practitioner that patients booked an appointment with.

131.    Thus, Heap—as aided by Defendant—intercepted "medical information," which is confidential, under Cal. Civil Code § 56.10.

132.    When communicating with Defendant, Plaintiff and Subclass Members had an objectively reasonable expectation of privacy, based on Cal. Civil Code § 56.10.  Thus, Plaintiff and Subclass Members did not reasonably expect that anyone other than Defendant would be on the other end of the communication, and that other third-party entities like Heap would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

133.    Plaintiff and Subclass Members did not consent to Heap's actions.  Nor have Plaintiff or Subclass Members consented to Heap's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

134.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by Defendant's violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 632(a).

42

## COUNT IV
### Violation of the California Confidentiality of Medical Information Act
### Cal. Civ. Code § 56.10

135.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

136.    Plaintiff brings this Count individually and on behalf of the members of the Subclass.

137.    Under the CMIA, providers of health care are prohibited from disclosing medical information relating to their patients, without a patient's authorization.

138.    Additionally, "[e]xcept to the extent expressly authorized by a patient, enrollee, or subscriber, or as provided by subdivisions (b) and (c), a provider of health care, health care service plan, contractor, or corporation and its subsidiaries and affiliates shall not intentionally share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide health care services to the patient." Cal. Civ. Code § 56.10(d).

139.    Medical information means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care ... regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j). "'Individually Identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." *Id*.

140.    Cal. Civ. Code § 56.06(a) defines a provider of health care as "[a]ny business organized for the purpose of maintaining medical information in order to make the information

available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis and treatment of the individual[.]"

141.    Plaintiff and Subclass Members are patients under the definition of the CMIA because Plaintiff and Subclass Members received "health care services from a provider of health care," and the information Defendant disclosed and/or shared to Heap was "medical information pertain[ing]" to Plaintiff and Subclass Members.  Cal. Civ. Code § 56.05(m).

142.    Defendant is a provider of health care under Cal. Civ. Code § 56.06(a) because it is an organization designed to provide patients with access to health care and provides a Website, iOS App, and Android App from which patients can manage their diagnosis or treatment of their medical conditions.  Because Defendant is deemed a provider of health care, it has an ongoing obligation to comply with the CMIA's requirements regarding the maintenance of its user's medical information.

143.    As set forth hereinabove, patients' names, Heap identities, and Heap user IDs are identifiers sufficient to allow identification of an individual.  Along with patients' names, Heap identities, and Heap user IDs, Defendant disclosed and/or shared to Heap several pieces of information regarding its patients' use of its Website, iOS App, and Android App, which, on information and belief, included, but is not limited to: the particular type of appointment patients were seeking, the fact that patients booked an appointment, and, in the case of the Website and iOS App, the particular healthcare practitioner that patients were booking an appointment with.

144.    This patient information is derived from a provider of health care regarding patients' medical treatment and physical condition. Accordingly, it constitutes medical information pursuant to the CMIA.

145.    Defendant in its Notice of Privacy Practices clearly states that "[w]e are required

44

by law to maintain the privacy and security of your protected health information .… We will not use or share your information other than as described here unless you tell us we can in writing."[45] However, as demonstrated hereinabove, Defendant fails to obtain its patients' authorization for the disclosure of medical information to Heap, which is done for marketing and analytics purposes.

146.    Pursuant to CMIA § 56.11, a valid authorization for disclosure of medical information must: (1) be "[c]learly separate from any other language present on the same page and is executed by a signature that serves no other purpose than to execute the authorization"; (2) be signed and dated by the patient or her representative; (3) state the name and function of the third party that receives the information; and (4) state a specific date after which the authorization expires. Accordingly, the information set forth in Defendant's Privacy Policy does not qualify as a valid authorization.

147.    Based on the above, Defendant violated the CMIA by disclosing and sharing its patients' medical information to Heap, along with the patients' names, Heap identities, and Heap user IDs, among other identifiers, while failing to obtain patients' valid authorizations for the disclosure of medical information.

148.    Under the CMIA, a patient may recover compensatory damages, punitive damages not to exceed $3,000 dollars and attorneys' fees not to exceed $1,000, and the costs of litigation for any violating disclosure of medical information.  Cal. Civ. Code § 56.35. Alternatively, a patient may recover nominal damages of $1,000 for any negligent release of medical information.  Cal. Civ. Code § 56.36.

//

//

---

[45] NOTICE OF PRIVACY PRACTICES, AMWELL MEDICAL GROUP,
https://patients.amwell.com/siteassets/documents/notice-of-privacy-practices-for-amg.

45

## COUNT V
### Invasion Privacy Under California's Constitution

149. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

150. Plaintiff brings this Count individually and on behalf of the members of the Subclass.

151. Plaintiff and Subclass Members have an interested in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites and mobile applications without being subjected to wiretaps without Plaintiff and Subclass Members' knowledge or consent.

152. At all relevant times, by installing and embedding Heap tracking technology into the Website, iOS App, and Android App so that Heap could intercept and/or otherwise obtain users' private communications with Defendant regarding their health conditions and treatment, Defendant intentionally invaded Plaintiff's and Subclass Members' privacy rights under the California Constitution.

153. Plaintiff and Subclass Members had a reasonable expectation that their communications about their health conditions and treatment, and other private information, would remain confidential and that Defendant would not enable Heap's interception of this sensitive information given that Defendant did not provide Plaintiff and Subclass Members with the required notice of its practice of disclosures.

154. Plaintiff and Subclass Members did not authorize Defendant to record and transmit Plaintiff's and Subclass Members' private medical communications alongside their personally identifiable health information.

46

155.    This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications.  Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

156.    Accordingly, Plaintiff and Subclass Members seek all relief available for invasion of privacy claims under California's Constitution.

**COUNT VI**
**Intrusion Upon Seclusion**
**(On Behalf of the Nationwide Class and California Subclass)**

157.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Classes.

158.    Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications about their health conditions and treatment; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites and applications without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

159.    At all relevant times, by installing and embedding the Heap tracking technology into the Website, iOS App, and Android App, so that Heap could intercept users' private communications with Defendant regarding their health conditions and treatment, Defendant intentionally invaded Plaintiff's and Class Members' privacy rights by intruding into their private place, conversation or matter.  Defendant's actions amount to an intrusion upon Plaintiff's and Class Members' privacy because Plaintiff and Class Members did not consent to the particular conduct that Defendant engaged in—allowing Heap to intercept their sensitive conversations related to their health concerns and treatment.

160.    Plaintiff and Class Members had a reasonable expectation that their

47

communications about their health conditions and treatment, and other private information, would remain confidential and that Defendant would not enable third party interception of this sensitive information given that Defendant did not provide Plaintiff and Class Members with the required notice of its practice of disclosures.

161. Plaintiff and Class Members did not authorize Defendant to record and transmit Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information.

162. This invasion of privacy is highly offensive and serious in nature, scope, and impact because it relates to patients' private health condition and treatment communications. Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

163. Accordingly, Plaintiff and Class Members seek all relief available for Defendant's intrusion upon their seclusion.

### RELIEF DEMANDED

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. For a determination that this action is a proper class action;

b. For an order certifying the Class and Subclass, naming Plaintiff as representative of the Class and Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

c. For an order declaring that Defendant's conduct violates the statutes referenced herein;

d. For an order finding in favor of Plaintiff, the Class, and Subclass on all counts asserted herein;

e. For an award of compensatory damages, including statutory damages where available, to Plaintiff, Class, and Subclass Members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial;

f. For punitive damages, as warranted, in an amount to be determined at trial;

g.  For an order requiring Defendant to disgorge revenues and profits wrongfully obtained;

h.  For prejudgment interest on all amounts awarded;

i.  For injunctive relief as pleaded or as the Court may deem proper;

j.  For an order awarding Plaintiff, the Class, and the Subclass their reasonable attorneys' fees and expenses and costs of suit; and

k.  For an order granting Plaintiff, Class, and Subclass Members such further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: September 26, 2025                              Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Yitzchak Kopel*
        Yitzchak Kopel

Yitzchak Kopel (BBO # 716245)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta*
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury*
6 Carriage Lane
Highwood, IL 60040
Telephone: (312) 358-8225
Email: scott@drurylegal.com

*Attorneys for Plaintiff*

49

*Pro Hac Vice application forthcoming*

50